**Stephen P. SANDER; Anne Q. Sander, husband and wife, Plaintiffs–Appellants–Cross–Appellees,**

v.

**WEYERHAEUSER COMPANY, Defendant–Appellee–Cross–Appellant.**

**Nos. 90–35483, 90–35504.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 6, 1992.

Decided June 8, 1992.

William J. Glueck, Appel & Glueck, Peter K. Mair, Mair, Abercrombie, Camiel & Rummonds, Seattle, Wash., for plaintiffs-appellants-cross-appellees.

Louis D. Peterson, Hillis, Clark, Martin & Peterson, Seattle, Wash., for defendant-appellee-cross-appellant.

Before BROWNING, WRIGHT, and FERNANDEZ, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Sander appeals the summary judgment dismissal of his action against Weyerhaeuser. He contends that Weyerhaeuser's failure to disclose a material valuation study during an arbitration hearing resulted in the undervaluation of his shares. His federal court action alleged violations of both federal and state securities laws. Weyerhaeuser cross appeals the court's denial of its summary judgment motion that alleged that Sander's claims were impermissible collateral attacks on the arbitration award.

I

This dispute arises from Weyerhaeuser's acquisition of 80% of Great Northern Annuity Company's (GNA) common stock in

1983. Sander and another shareholder held the remaining 20%. Weyerhaeuser had an option to buy the remaining shares after June 1988.

Sander was terminated as a GNA employee in February 1984. Under an amendment to the shareholders' agreement, Weyerhaeuser promised to buy Sander's shares at their fair market value on June 30, 1985. An arbitration panel would determine the fair market value. The panel would have two partisan arbitrators who would choose a third neutral arbitrator. Before the arbitration began, the parties agreed to exchange their experts' valuations.

The arbitration panel conducted six days of hearings. Weyerhaeuser's expert valued Sander's shares at $1,933,250. His expert valued his shares at $9,900,000. The panel found that the fair market value of Sander's stock was $3,000,000.

Sander filed a state court petition to vacate the award, alleging misconduct by the arbitrators; the court denied the petition and affirmed the award.

Two years later, he sued in federal court alleging violations of federal and state securities law. Sander claimed that Weyerhaeuser failed to disclose a promised preliminary valuation prepared by Morgan Stanley. This valuation compared GNA favorably to another annuity company which Morgan Stanley valued at three times its book value. Sander argued that Weyerhaeuser's failure to disclose this material information caused his shares to be undervalued.

Weyerhaeuser filed two motions for summary judgment. In its first motion, it argued Sander could not collaterally attack his arbitration award. The court held that Sander's securities fraud claim was a separate action, but granted interlocutory appeal. This court denied that appeal. Weyerhaeuser cross appeals on this issue.

The court granted Weyerhaeuser's second motion, agreeing that the Morgan Stanley report was soft information and not material under the securities laws, and that Sander had waived his right to raise fraud because he did not appeal the issue directly.

We reverse the denial of Weyerhaeuser's first motion for summary judgment. Because Sander's claims are precluded as impermissible collateral attacks on the arbitration award, we need not decide whether the Morgan Stanley Preliminary Valuation was material or whether Sander had waived his fraud claim.

## II

Weyerhaeuser appeals the court's denial of its first motion for summary judgment. It sought dismissal of Sander's claims on the grounds that they were barred by the rule against collateral attack on the arbitration award. The court denied that motion, holding that Sander's securities claims involve "a completely separate concept" from those raised in the state court. Weyerhaeuser contends that Sander is attempting to circumvent the arbitration agreement by impermissibly attacking the award collaterally.

We agree that Sander is merely attempting to get a revaluation of his stock. He may not do so in this proceeding.

We would establish poor precedent if we allowed Sander to bring an action under securities laws because he is unhappy with the results of an adjudicative proceeding. One other circuit has refused to allow such an action. In *Harris Trust & Sav. Bank v. Ellis*, 810 F.2d 700, 704 (7th Cir.1987), the court reasoned:

If the securities laws overrode state principles of finality, the losing side in the appraisal could walk into federal court and try again, with the refrain that the winner in state court had defrauded the judge by not being forthcoming about which was the better estimate of value. The securities laws do not allow such a displacement of state valuation proceedings into federal court.

.    .    .    .    .

[N]o court has held or even hinted that if the disclosures—adequate or deficient—provoke an action in state court to appraise the corporate shares, the federal securities laws regulate the disclosure in

and conduct of that litigation. We conclude that they do not. The amount of disclosure required, and the remedies for deficient disclosure, in actions to appraise the value of stock are questions of state law alone.

The case at hand is no different. Of course, the initial adjudication was in an arbitration proceeding. That proceeding was subject to its own internal rules of conduct, however. This argues for an even greater regard for the interests of finality. This court has been extremely unwilling to upset the streamlined nature of arbitration by permitting the launching of collateral attacks. In *LaFarge Conseils et Etudes, S.A. v. Kaiser Cement,* 791 F.2d 1334, 1339 (9th Cir.1986), we refused to allow the disappointed party to attack an arbitration award after the 90 day time period provided in 9 U.S.C. § 12 by moving to set aside the confirming judgment under Fed. R.Civ.P. 60(b). In this suit, Sander uses the guise of an independent suit under the securities laws rather than Rule 60. However, the underlying complaint is that the arbitration award "was procured by ... fraud." This is a statutory ground for vacating an award under 9 U.S.C. § 10 and Wash.Rev.Code § 7.04.160(1). It is therefore governed by the time limitation in 9 U.S.C. § 12 and Wash.Rev.Code § 7.04.180. The three month limitation "is meaningless if a party to the arbitration proceedings may bring an independent direct action asserting such claims outside of the statutory time period." *Corey v. New York Stock Exchange,* 691 F.2d 1205, 1213 (6th Cir. 1982).

It should be noted that this securities fraud is said to have occurred because one piece of information was withheld from the arbitrators. The arbitrators had independent valuations from both sides, and each had full access to the facts regarding the stock valuation. The only missing evidence was the Morgan Stanley valuation showing that Morgan Stanley had also relied on some of the facts on which Sander's experts had relied.

The Morgan Stanley valuation, which we assume for present purposes was improperly withheld, is said to turn this into a securities fraud action. However, the suggestion that the adversary proceeding which resulted in the valuation of Sander's stock should be likened to the purchase and sale of securities does not appeal to us. Rather, that proposition opens up the possibility for unending collateral attacks on the results of adjudications on grounds that some piece of discovery or another was withheld or improperly represented. We find that quite inappropriate. That this case involves securities should not divert the usual course or results of litigation. *See Corey,* 691 F.2d at 1213 (prior arbitration); *Metlyn Realty Corp. v. Esmark, Inc.,* 763 F.2d 826, 833 (7th Cir.1985) (prior litigation).

The court erred in denying Weyerhaeuser's first motion for summary judgment.

REVERSED in part and AFFIRMED in part. Weyerhaeuser will have its costs on appeal.