FILED

May 15 2012

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 11-0440

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 105

JAMES J. KURTZENACKER, III and
KRISTINE R. KITTLESON,

      Plaintiffs and Appellees,

    v.

DAVIS SURVEYING, INC. and
KENNETH E. DAVIS,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DV 09-147
Honorable James B. Wheelis, Presiding Judge

COUNSEL OF RECORD:

    For Appellants:

        Jean E. Faure, Jason T. Holden; Faure Holden Attorneys at Law, P.C.;
Great Falls, Montana

        Douglas C. Allen, Attorney at Law; Shelby, Montana

    For Appellees:

        Thane P. Johnson; Johnson, Berg & Saxby, PLLP; Kalispell, Montana

Submitted on Briefs:  March 14, 2012

Decided:  May 15, 2012

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Davis Surveying, Inc. (Davis Surveying) and Kenneth Davis (Davis) (collectively Appellants) appeal from an order of the Nineteenth Judicial District, Lincoln County, which held Appellants liable for breach of contract and negligence and awarded damages for misrepresenting the boundaries of Appellees' property. We affirm in part, reverse in part, and remand for entry of an amended judgment. We address the following issues:

¶2     *1.  Did the Appellees have actual or constructive notice of recorded surveys that correctly defined the boundaries of their property?*

¶3     *2.  Did the District Court err in determining that Appellees were third-party beneficiaries of a contract for a prior survey?*

¶4     *3.  Did the District Court err in determining Appellees were entitled to damages based on negligent misrepresentation?*

¶5     *4.  Is there substantial evidence to support the District Court's determination that Kenneth Davis is personally liable to Appellees for work done by Davis Surveying, Inc.?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶6     Kristine Kittleson (Kittleson) and James J. Kurtzenacker, III (collectively Appellees) own a 9.25 acre tract of land near Troy, Montana. The property is located just above the Troy Dam, which impounds Lake Creek. The Troy Dam and surrounding property is owned by Northern Lights, Inc. (Northern Lights), with whom the Appellees share a common boundary on the western edge of Appellees' parcel.

¶7     In 1994, a predecessor in title to Northern Lights hired Marquardt Surveying to perform a retracement survey, which identified the eastern boundary of Northern Lights' parcel and the western boundary of what would become the 9.25 acre tract of land

2

purchased by Appellees. This survey, COS 2287, was filed in 1995 and will be referred to herein as the 1995 survey.

¶8 In 1997, Davis Surveying conducted two surveys, COS 2530 and COS 2591, for Stimson Lumber, a predecessor in title to Appellees, and for Plum Creek Management, respectively.[1] In 1998, Davis Surveying conducted a survey, COS 2634, for Appellees' immediate predecessor in title, Osprey Bend Partnership (Osprey Bend or the Partnership). The purpose of the 1998 survey was to combine several parcels into the 9.25 acre tract that Appellees would eventually purchase in 2006. In the 1997 and 1998 surveys, Davis did not survey the western boundary of the subject parcel, but instead relied upon the 1995 survey done by Marquardt. The 1995, 1997, and 1998 surveys were all recorded in the records of Lincoln County. All of these surveys appear from the record to correctly identify the western boundary as well as the southwestern corner of the 9.25 acre parcel.[2]

¶9 The Appellees purchased the 9.25 acre parcel on September 12, 2006 from Osprey Bend. Their warranty deed references the above-mentioned surveys. At trial, the parties offered very different versions of the events leading up to and following the Appellees' purchase of the land.

---

[1] The record does not clearly indicate the nature of Plum Creek's affiliation with the property, specifically, whether Plum Creek owned an interest in the property, such as timber rights, or was merely a manager of the property.

[2] The District Court's Findings of Fact, Conclusions of Law and Order includes a statement that an unspecified "Defendants' survey" was later found to be inaccurate. We are unsure of the basis for this statement, but given our resolution of the appeal, it is unnecessary to analyze the issue further.

3

¶10    Appellees claimed that prior to their purchase of the property, they contacted Davis Surveying for assistance and that George Clark (Clark), an employee of Davis Surveying, met them at the property and showed them the boundary lines. They claimed Clark indicated that the parcel included waterfront property. Appellees alleged that they relied on Clark's representation that the parcel included waterfront property in deciding to make the purchase. They also alleged that Clark represented that the western boundary was approximately 30 feet further to the west than the true western boundary by placing marker flags in the wrong locations. They claimed that they relied on these flags when building on their property and landscaping their yard.

¶11    Appellants responded that they had nothing whatsoever to do with Appellees until after they had purchased the property, and therefore, Appellees could not have relied on representations by Clark in deciding to purchase the property. Appellants alleged that their first interaction with Appellees was when Appellees contacted Davis Surveying about performing a subdivision health review after the purchase of their property. Clark and Davis testified that Clark did not go to the Appellees' property until 2007, a year after Appellees purchased it, and offered Clark's work diary as evidence to support their contention.

¶12    The subject parcel does not include any waterfront area, and the western boundary as allegedly represented by Clark was incorrect. Appellees asserted that, based on Clark's incorrect flagging, they built a garage with an upper apartment, a yard with landscaping, and a dock with stairs leading thereto. They planned to live in the apartment

4

while building a primary dwelling, intending to eventually use the apartment as guest lodging. Before they built the primary dwelling, they were informed by Northern Lights that they were trespassing on Northern Lights' property and needed to remove the stairs, dock, and part of the lawn. Subsequent surveys performed at the request of Northern Lights and Appellees both confirmed that Appellees were trespassing and owned no waterfront property.

¶13 Appellees sued both Davis Surveying and Davis, personally, alleging negligent misrepresentation, negligence, and breach of contract based on a third-party beneficiary theory. Appellees asserted it was no longer feasible for them to construct the primary dwelling, and they are currently living in the apartment above the garage. They claimed diminished access to their property because the road they formerly used crosses Northern Lights' property. They claimed that they "lost" much of their property because it is encumbered with power company easements. After a bench trial, the District Court held that both Davis Surveying and Davis were liable for breach of contract under a third-party beneficiary theory and for negligent misrepresentation, and awarded damages to the Appellees in the amount of $140,344. Davis Surveying and Davis appeal.

**STANDARD OF REVIEW**

¶14 We review findings of fact entered after a civil bench trial to determine if they are supported by substantial credible evidence. We review this evidence in the light most favorable to the prevailing party and leave the credibility of witnesses and weight assigned to their testimony to the determination of the District Court. *Only a Mile, LLP*

5

*v. State*, 2010 MT 99, ¶ 10, 356 Mont. 213, 233 P.3d 320 (citing *In re Kelly*, 2010 MT 14, ¶ 25, 355 Mont. 86, 224 P.3d 640). "We review a district court's conclusions of law in this context for correctness." *Only a Mile, LLP*, ¶ 10 (citing *DeNiro v. Gasvoda*, 1999 MT 129, ¶ 9, 294 Mont. 478, 982 P.2d 1002).

## DISCUSSION

¶15    *1. Did the Appellees have actual or constructive notice of recorded surveys that correctly defined the boundaries of their property?*

¶16    Appellants argue Appellees had actual and constructive notice of the western boundary and the southwestern corner of their property because the 1995, 1997, and 1998 surveys were recorded in the records of Lincoln County and were referenced in the 2006 warranty deed transferring the property to Appellees. Citing authorities, Appellants argue that a purchaser of real property is on constructive notice of all matters properly recorded, whether or not there is actual knowledge of such matters, and that a purchaser is on actual notice of all matters referred to in a warranty deed that expressly states that the conveyance is subject to a survey of record. Therefore, there is no legal basis to award damages for breach of contract or negligent misrepresentation.

¶17    Appellants are represented by different counsel on appeal and did not raise this notice issue in the District Court. "We generally refuse to consider arguments raised for the first time on appeal because 'it is fundamentally unfair to fault the trial court for failing to rule on an issue it was never given the opportunity to consider.'" *City of Missoula v. Moore*, 2011 MT 61, ¶ 13, 360 Mont. 22, 251 P.3d 679 (citing *State v. LaFreniere*, 2008 MT 99, ¶ 11, 342 Mont. 309, 180 P.3d 1161). Because this issue was

6

not raised at trial, and the District Court had no opportunity to consider or rule on the issue, we decline to address it further.

¶18   *2. Did the District Court err in determining that Appellees were third-party beneficiaries of a contract for a prior survey?*

¶19   Davis Surveying completed surveys for Stimson Lumber in 1997, for Plum Creek Management in 1997, and for Osprey Bend Partnership in 1998. The District Court determined that Appellees were third-party beneficiaries to at least one of the survey contracts between Davis Surveying and Osprey Bend, on the ground that the survey(s) were done in contemplation of future sales.[3]

¶20   Not everyone who may benefit from performance or suffer from nonperformance of a contract between two other parties is permitted to enforce the contract. *Diaz v. Blue Cross & Blue Shield of Mont.*, 2011 MT 322, ¶ 18, 363 Mont. 151, 267 P.3d 756 (citing Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts vol. 13, § 37:7, 29 (4th ed., West 2000)). A stranger to a contract lacks standing to sue for breach of that contract unless he is an intended third-party beneficiary of the contract. *Dick Anderson*

---

[3] The Findings of Fact are somewhat contradictory and confusing with regard to the contractual relationships giving rise to the surveys. The signatures of the Osprey Bend partners are on COS 2591, the 1997 survey, as property owners, but it appears that Plum Creek commissioned the survey. The relationship between Plum Creek and the Partnership is not disclosed, but we understand that when the District Court cites to the contract for the 1997 survey for Osprey Bend, it is referring to the survey commissioned by Plum Creek. Neither party produced a written contract between Davis Surveying and any of the above-mentioned parties, although it is evident that such contracts, whether written or not, were performed. The District Court was not entirely clear as to which contract or contracts between Davis Surveying and the prior landowners formed the basis for the conclusion that Appellees had obtained third-party beneficiary status, but our review convinces us that the 1998 contract between Davis Surveying and Osprey Bend and the 1997 survey commissioned by Plum Creek, for which Osprey Bend was listed as owner, were such foundational contracts.

7

*Constr., Inc. v. Monroe Constr. Co., LLC*, 2009 MT 416, ¶ 46, 353 Mont. 534, 221 P.3d 675 (citations and quotations omitted). "A plaintiff cannot assume that he is an intended third-party beneficiary; rather, he must show from the face of the contract that it was intended to benefit him." *Klingman v. Mont. Pub. Serv. Commn.*, 2012 MT 32, ¶ 40, 364 Mont. 128, 272 P.3d 71 (citing *Diaz*, ¶¶ 19, 21). In *Harmon v. MIA Serv. Contracts*, 260 Mont. 67, 72, 858 P.2d 19, 22-23 (1993), we adopted the following definition of an intended beneficiary from the Restatement (Second) of Contracts, § 302 (1981):

> (1)  Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
>> (a)  the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>>
>> (b)  the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

The Restatement defines an "incidental beneficiary" as "a beneficiary who is not an intended beneficiary." Restatement (Second) of Contracts § 302(2). Incidental beneficiaries have no right to enforce a contract. *Ronning v. Yellowstone Co.*, 2011 MT 79, ¶ 14, 360 Mont. 108, 253 P.3d 818 (citing Restatement (Second) of Contracts § 315).

¶21   In holding that the Appellees were third-party beneficiaries to the survey contract(s) between Osprey Bend and Davis Surveying, the District Court reasoned that "although the Plaintiffs themselves were not specifically contemplated as beneficiaries of a survey, who else but the partnership and its eventual purchasers would benefit?" The court also found that "[a]ll acts done by agreement between Defendants and the Osprey

8

Bend Partnership were done in contemplation of further sales of the property to purchasers, which necessarily included the Plaintiffs, even though they were not known to either party when the Defendants performed work for the partnership." The court cited to cases from other jurisdictions to support its conclusion that Appellees were members of a class who were to benefit from the contract(s) between Davis Surveying and the Partnership.

¶22 The record indicates that the survey(s) done for Osprey Bend were to combine several tracts of land into a larger parcel. While several of the Osprey Bend partners testified at trial none of them offered any indication that these surveys were done for the benefit of any future purchasers. With the possible exception of Plum Creek Management, whose involvement is evident from the record but not fully disclosed, the record offers no evidence, and Appellees provided none, that any party but Osprey Bend was intended to benefit from the survey contracts. The record fails to establish, as required under the Restatement, that either "the performance of the promise [by Davis Surveying] will satisfy an obligation of the promisee [Osprey Bend] to pay money to the beneficiary [Appellees]"; or that "the circumstances indicate that the promisee [Osprey Bend] intends to give the beneficiary [Appellees] the benefit of the promised performance." Restatement (Second) Contracts § 302. Thus, at most, Appellees were incidental beneficiaries to the survey contracts and have no right of enforcement. As discussed above, Montana law on this issue is well settled. The District Court's reliance on foreign authority was misplaced and would greatly alter our jurisprudence.

9

¶23    As a stranger to the survey contracts between Davis Surveying and Osprey Bend, Appellees lack standing to bring an action for breach of contract.  *Dick Anderson Constr., Inc.*, ¶ 46.  The District Court is reversed on this issue.  However, this does not require reversal of the judgment in favor of Appellees.  While the District Court erred in this reasoning, it reached the right result under Appellees' negligent misrepresentation claim, discussed below.  "We will not reverse a district court where it reached the right result, although for the wrong reason."  *Ronning*, ¶ 8 (citations omitted).

¶24    *3. Did the District Court err in determining Appellees were entitled to damages based on negligent misrepresentation?*

¶25    The tort of negligent misrepresentation requires proof of the following elements:

1)  the defendant made a representation as to a past or existing material fact;

2)  the representation must have been untrue;

3)  regardless of its actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true;

4)  the representation must have been made with the intent to induce the plaintiff to rely on it;

5)  the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation, and it must have been justified in relying on the representation;

6)  the plaintiff, as a result of his or her reliance, sustained damage.

*Deichl v. Savage*, 2009 MT 293, ¶ 19, 352 Mont. 282, 216 P.3d 749.

¶26    The District Court concluded that Appellants/Defendants owed a duty to locate the boundaries of the property accurately, that they breached this duty, that Appellees

reasonably relied on Clark's statements, and that this caused damage to the Appellees. Appellants argue that Appellees did not prove the elements of negligent misrepresentation because Appellees' trial testimony was inconsistent and contradictory and did not rise to the level of substantial evidence. Appellants argue that the District Court clearly erred when it found that Clark went to the Appellees' property in 2006, prior to purchase of the property, rather than in 2007, subsequent to the purchase.

¶27 The evidence in this case is notable for the clearly contradictory versions presented about the year in which Clark visited the property. After listening to the conflicting testimony of Clark and Kittleson, the District Court determined Kittleson to be the more credible witness. It found that Clark represented to the Appellees that their western boundary was further to the west than it really is by finding a corner pin and pacing off the western boundary. The court found that Clark placed flags along this inaccurate western boundary, although Clark testified that he did not flag the entire boundary. The District Court found that Clark told the Appellees that he could not find the southwestern pin because it was likely under water, indicating that a portion of the property was waterfront.

¶28 These representations by Clark to Appellees, as found by the District Court, were untrue. Clark did not have a basis for believing these representations to be true because the surveys done by Davis Surveying had correctly identified the western boundary and indicated that the parcel did not include any waterfront property. The District Court found that Appellees relied on Clark's representations in their decisions to purchase the

11

property, make improvements on it, and landscape it. It reasoned that "Plaintiffs' reliance on Clark's representation was reasonable, given that he was an employee of the defendant corporation, which regularly performed surveying and authored plats for subdivisions and other real estate enterprises."

¶29 Regarding Clark's contrary version, the District Court ruled that the "[e]vidence contradicting the sequence of events found above was not credible. Evidence contradicting the Plaintiffs' reliance on Clark and the Defendants was not credible. Evidence contradicting the reasonableness of Plaintiffs' reliance on Clark and the Defendants was not credible."

¶30 "It is well established that the trial court is in the best position to observe and judge the credibility of witnesses, [therefore] we do not second guess the district court's determination regarding the strength and weight of conflicting testimony." *In re S.R.T.*, 2011 MT 219, ¶ 25, 362 Mont. 39, 260 P.3d 177 (internal quotations and citation omitted). Appellants have emphasized the evidence that was contradictory to the evidence the District Court found to be credible. However, while the evidence may well have allowed a different conclusion, our review of the evidentiary record does not "leave[] this Court with a definite and firm conviction that a mistake has been made." *Puccinelli v. Puccinelli*, 2012 MT 46, ¶ 13, 364 Mont. 235, 272 P.3d 117 (citation omitted). Likewise, while there was contradictory evidence presented by the parties with regard to damages, we cannot conclude that the District Court erred in awarding the damages it found to have been caused to Appellees by the misrepresentation. Therefore,

12

we affirm the District Court's findings of fact and conclusions of law with regard to the liability and damages of this claim.

¶31    *4. Is there substantial evidence to support the District Court's determination that Kenneth Davis is personally liable to Appellees for work done by Davis Surveying, Inc.?*

¶32    Davis argues there is not substantial evidence in the record to support the District Court's determination that he is personally liable to Appellees.  Davis cites *Gentry v. Douglas Hereford Ranch, Inc.*, 1998 MT 182, 290 Mont. 126, 962 P.2d 1205, for the proposition that a claim of vicarious liability based upon the doctrine of *respondent superior* requires there to have been an employment relationship between the tortfeasor, (here, Clark), and himself.  He argues that Clark was an employee of Davis Surveying, Inc.  Appellees respond that Davis committed the tort of negligent misrepresentation by personally failing to show Kittleson the correct pin location of Appellees' property and by continuing to "perpetuate this misrepresentation" by producing and testifying about Clark's handwritten diary indicating the days and the year that Clark was on the Appellees' property.  Appellees also argue that "Davis failed to object or raise at the District Court . . . the action against Davis individually . . . ."  They suggest that because Davis did not object, this issue is improperly presented for the first time on appeal.

¶33    Under § 26-1-402, MCA, "a party has the burden of persuasion as to each fact the existence or nonexistence of which is essential to the claim for relief . . . ."  It was Appellees' burden to put forth evidence to support their claim as to Davis' personal liability.  Davis denied the allegations of personal liability in his answer to the complaint,

13

*see* M. R. Civ. P. 8(b), and the issue was tried. Without more, Appellees' argument that Davis did not "object" to the claim filed against him individually at trial is ineffectual.

¶34 The claims of Appellees against Appellants were made generally and jointly, asserting that "[d]efendants had a duty to accurately place the flags and markers" and that "[d]efendants made representations" concerning the location of the property boundaries that were inaccurate and therefore breached their duty to Appellees. Appellees made no separate claim against Davis based upon his role as an officer, director, or shareholder of the corporation, nor did they assert a claim to pierce the corporate veil to hold Davis personally liable for the corporation's obligation.[4] Consistent therewith, the District Court found Davis to be personally liable but entered no findings of fact or conclusions of law specifically related to Davis' personal liability. Rather, it entered findings and conclusions only as to the defendants jointly.

¶35 Our review of the record reveals no evidence on which to hold Davis personally liable for breach of the duty to Appellees to accurately represent the property boundaries. Davis did not personally perform the flagging on Appellees' property, which misrepresented the boundaries prior to Appellees' purchase of the property, and he was not present when it was done. Davis did not otherwise personally make representations to the Appellees about the property boundaries prior to their purchase. Neither Davis'

---

[4] Appellees offer veil-piercing arguments on appeal, citing *Phillips v. Mont. Educ. Assn.*, 187 Mont. 419, 425, 610 P.2d 154, 158 (1980), for the proposition that "[t]he corporate veil should not be utilized as a protective device by those who employ corporate power or authority to serve their own ends." However, because no such claim was made or tried in the District Court, we decline to address the issue.

14

production of Clark's work diary during the course of litigation, in which Clark detailed his daily work on each surveying job, nor his testimony regarding the dates Clark was at the property were a "perpetuation of the misrepresentation" by Davis. Davis was merely testifying and producing evidence to refute the claims of the Appellees. Appellees failed to offer evidence to carry their burden of proving their claim that Davis was personally liable. The District Court is reversed on this issue.

¶36    We affirm in part and reverse in part the judgment entered by the District Court. We remand this matter for entry of an amended judgment in accordance herewith.


/S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON